***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Deluca with minor modifications.
 *********** MOTION
On February 5, 2008 at the hearing of this matter before the Full Commission, plaintiff filed a motion for a Change of Condition pursuant to N.C. Gen. Stat. § 97-47. Defendant *Page 2 
objected to plaintiff's motion. Upon review of plaintiff's motion and defendant's response, the Full Commission, hereby DENIES plaintiff's motion.
 *********** ISSUES
The issues to be heard were as follows:
1. Whether plaintiff has established that she is totally and permanently disabled as a result of her compensable injury on February 5, 2001?
2. What amount, if any, is plaintiff entitled to recover?
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. Plaintiff and defendants are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and were so subject to and bound by the Act on February 5, 2001.
2. An employer-employee relationship existed between plaintiff and defendant on February 5, 2001.
3. Defendant is self-insured with Key Risk Management Services, Inc. as the third party administrator.
4. The parties stipulated into the record a Pretrial Agreement, medical records, Industrial Commission Forms, case management reports, and employment records.
 *********** *Page 3 
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a 65-year-old female with a date of birth of May 15, 1943. Plaintiff has a Masters Degree from Idaho State University in special education, social sciences, curriculum, and supervision.
2. Prior to plaintiff's employment with defendant, plaintiff worked as a teacher in Idaho, Virginia, and in the counties of Watauga and Columbus in North Carolina. Plaintiff has been a teacher with defendant for over 30 years and has accumulated a total of approximately 40 years of teaching experience.
3. In February 2001, plaintiff was employed by defendant as a teacher for Amos Cottage, which was associated with Wake Forest Baptist Medical Center. In this position, plaintiff provided educational services for students from six years to 16 years of age, many of whom were special needs students.
4. On February 5, 2001, plaintiff was trying to calm and subdue a violent child in the course of her employment when the child attacked her. Plaintiff sustained injuries to her right arm, shoulder, neck and chest wall.
5. Defendant paid plaintiff total disability benefits at the 2001 maximum compensation rate of $620.00 per week based on a reported average weekly wage of $1,079.80.
6. On February 7, 2001, plaintiff began treatment at Prime Care Occupational Medicine for right shoulder strain, chest wall strain, and upper arm strain. On February 27, 2001, plaintiff was referred to Orthopaedic Specialists of the Carolinas for evaluation and treatment. On April 26, 2001, Dr. James Dallis of Orthopaedic Specialists of the Carolinas diagnosed plaintiff with *Page 4 
cervical strain, shoulder bursitis, and carpal tunnel syndrome on the right side. Plaintiff was referred to physical therapy for her shoulder and neck. She was placed on light duty with limited use of the right upper extremity.
7. On August 22, 2001, Dr. David O'Brien, Jr. of Orthopaedic Specialists of the Carolinas opined that plaintiff's neck and low back pain had somewhat improved, but that it was persistent and the etiology was unclear. Plaintiff was released to full duty with no work restrictions. In October 2001, plaintiff was diagnosed with possible right C6 radiculopathy due to her cervical disc protrusion or herniation at C5-6. Plaintiff was referred to Dr. Harlan Daubert of Orthopaedic Specialists of the Carolinas for a surgical consultation in April 2002.
8. Plaintiff began treatment with Dr. Daubert in June 2002. On August 12, 2002, Dr. Daubert recommended a C6 anterior disectomy and fusion with iliac crest bone graft. Plaintiff obtained a second opinion from Dr. Del Curling in Kernersville. Dr. Curling concurred with Dr. Daubert's recommendation. On October 18, 2002, plaintiff underwent this surgery. In January 2003, Dr. Daubert noted that plaintiff's fusion appeared to be healing, but had not healed completely.
9. After surgery, plaintiff was out of work until January 31, 2003. Plaintiff was released to return to work on February 1, 2003 with light duty restrictions that included no lifting more than ten pounds. On April 29, 2003, plaintiff was diagnosed with right rotator cuff tendinitis without rotator cuff tear. Plaintiff continued to work with light duty restrictions of no lifting more than ten pounds. Plaintiff was referred to Dr. John E. Ritchie of Orthopaedic Specialists of the Carolinas, in April 2003, for right shoulder evaluation and treatment.
10. On May 19, 2003, Dr. Ritchie opined that it was "difficult to tell exactly where her pain is coming from, but most of her exam is consistent with impingement syndrome." Plaintiff *Page 5 
was scheduled for shoulder surgery in July 2003, but the surgery was cancelled due to plaintiff's adverse reaction to an anesthetic. Plaintiff's work restrictions were modified to "no lifting over 15 pounds at work, otherwise out of work."
11. In 2003, Amos Cottage was closed and plaintiff was transferred into the homebound program where students were taught in their homes. Plaintiff continued to work for defendant.
12. Plaintiff underwent shoulder surgery in June 2004. On August 12, 2004, plaintiff complained of a problem with holding the books for her disabled clients and lifting the materials in and out of the house. With this in mind, Dr. Ritchie stated that he recommended no lifting over ten pounds, no overhead lifting, and an ergonomic test to help reduce the stress on her shoulder.
13. On September 9, 2004, Dr. Ritchie saw plaintiff and noted that plaintiff's shoulder had improved, but was still not doing well.
14. Later in September 2004, plaintiff saw Dr. Daubert, who noted that plaintiff's fusion had still not healed completely.
15. On December 6, 2004, plaintiff was released with no work restrictions for her right shoulder injury. She continued to complain of neck and shoulder pain. In February 2005, plaintiff was placed on a 15-pound permanent lifting restriction for her neck injury.
16. Plaintiff discussed possible retirement with Ms. Linda Bourne with defendant, as plaintiff had been with the school system for 31 years.
17. On March 28, 2005, plaintiff submitted a "Teacher's Notification of Intent" to retire if eligible for full service retirement. She did not request a transfer from the homebound program.
18. On April 26, 2005, plaintiff addressed a letter to Dr. Donald Martin, Superintendent of defendant, stating that she was "very excited about exploring the new experiences, adventures, *Page 6 
and challenges, that retirement will bring." Plaintiff retired from defendant on July 1, 2005 with full service retirement benefits.
19. Plaintiff testified that Dr. Daubert and Dr. Ritchie recommended that she retire from her teaching position.
20. Dr. Daubert testified that in his medical records there is no reference to plaintiff retiring before or after July 1, 2005. He further testified that he was not aware that plaintiff had retired until the date of his deposition.
21. When questioned about whether he had recommended retirement for plaintiff, Dr. Ritchie testified, "I don't recall, specifically, stating that [or] making a direct recommendation that she should retire."
22. At the time of plaintiff's retirement in July 2005, plaintiff had a 15-pound permanent lifting restriction. Dr. Ritchie stated, "most teachers can teach with the restrictions that she had."
23. The greater weight of the credible evidence shows that plaintiff could have continued to perform her last position with defendant with her permanent work restrictions.
24. Based on plaintiff's educational background and work experience, she was also qualified for other readily available classroom positions, a curriculum coordinator position, and a study skills teacher position that were in all likelihood within her work restrictions. Plaintiff, however, never requested a transfer within defendant's system. Instead, plaintiff retired before reaching maximum medical improvement.
25. On October 17, 2005, Dr. Daubert performed another operation on plaintiff's neck. On March 10, 2006, Dr. Daubert opined that plaintiff was at maximum medical improvement with a 15% permanent partial disability to her neck. Plaintiff had permanent work restrictions of no *Page 7 
lifting over 15 pounds. On March 20, 2006, Dr. Ritchie assigned a 20% permanent partial rating to her shoulder.
26. Dr. Ritchie testified in his medical opinion that he did not believe that plaintiff was permanently and totally disabled.
27. Plaintiff has not presented sufficient evidence that she is incapable of employment in her former teaching position or other positions with defendant. Both Dr. Harlan Daubert and Dr. John E. Ritchie testified that plaintiff was physically and mentally capable of earning wages.
28. The Full Commission finds that the competent evidence showed that plaintiff was capable of employment when she retired from her employment with defendant.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident on February 5, 2001. N.C. Gen. Stat. § 97-2(6).
2. Disability is defined as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." Johnson v. Southern Tire Co.,358 N.C. at 707; N.C. Gen. Stat. §§ 97-2(9), 97-29.
3. To establish disability, plaintiff must establish facts indicating: "(1) [Plaintiff] was incapable of earning pre-injury wages in the same employment, (2) she was incapable of earning pre-injury wages in any other employment, and (3) the incapacity to earn pre-injury wages in either the same or other employment was caused by [the] Plaintiff's injury." Parker v. Wal-Mart Stores, Inc., 156 N.C. App. 209, 211-12,576 S.E.2d 112, 113-14 (2003); see Hilliard v. Apex Cabinet Co.,305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). *Page 8 
4. Plaintiff has failed to meet her burden of proof that she is disabled as a result of her compensable injury. Johnson v. Southern TireCo., 358 N.C. 701, 706, 599 S.E.2d 508, 512 (2004).
5. A suitable job is available to plaintiff, which she is capable of performing considering, among other things, her physical restrictions.Johnson v. Southern Tire Co., 358 N.C. at 708.
6. Plaintiff is capable of some work. She has failed to prove that she is permanently and totally disabled as a result of her compensable injury on February 5, 2001; therefore, plaintiff is not entitled to permanent and total disability compensation. See Hunt v. NCSU, I.C. No. 839851 (Full Commission 13 April 2007); N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for total disability benefits is hereby DENIED.
2. Defendants shall bear the costs.
This the 26th day of February, 2008.
S/_______________ BUCK LATTIMORE COMMISSIONER
CONCURRING:
 S/_______________ DANNY L. McDONALD COMMISSIONER
 S/_______________ PAMELA T. YOUNG CHAIR *Page 1